IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALBERT D. JAMES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | CIV-08-498-M |
| v. | ) | |
| | ) | |
| GREG PROVINCE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the conviction for Murder in the First Degree entered against him following a jury trial in the District Court of Oklahoma County, Case No. CF-2003-6933. Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's trial (hereinafter "TR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

In an information filed in the District Court of Oklahoma County on December 19, 2003, Petitioner was charged with shooting and killing Mr. Jason Batise on December 15, 2003. A jury trial on the charge was conducted on April 25-29, 2005. Evidence at the trial

showed that on the afternoon of December 15, 2003, Petitioner was a front seat passenger and Petitioner's eight-month-old daughter was a back seat passenger in a car being driven by his girlfriend, Ms. Lewis. TR vol. II, at 420-421. A man, Mr. Batise, driving another vehicle began following Ms. Lewis's car, and Ms. Lewis told Petitioner that she had previously dated Mr. Batise, that Mr. Batise was a "gang banger" who had recently been released from prison, that he was "very dangerous and jealous," and that she was afraid of him. TR vol. IV-A, at 7. At one point, as Ms. Lewis was stopped at a stop light and the light turned green, Mr. Batise "bumped" the back of her car with his vehicle. TR vol. IV-A, at 11. Ms. Lewis and Petitioner picked up Petitioner's friend, Mr. Threatt, at his uncle's house but did not tell him anything about problems with Mr. Batise. TR vol. II, at 403. Ms. Lewis pulled into a convenience store parking lot so that Mr. Threatt could get something to eat. TR vol. II, at 404. Mr. Batise then drove his vehicle into the convenience store parking lot "real fast" and parked a few feet from the passenger side of Ms. Lewis's car. TR vol. II, at 364-366. Mr. Batise and Petitioner began arguing from inside their respective vehicles and their arguing got progressively louder. TR vol. II, at 369. Mr. Batise's window was rolled up during this argument. TR vol. II, at 412, 416. Petitioner retrieved his loaded handgun from under the seat of Ms. Lewis's car and began to exit Ms. Lewis's vehicle. Ms. Lewis tried to grab him, and Ms. Lewis began screaming, "[S]omeone get him, someone get him." TR vol. II, at 369-370. Mr. Threatt also got out of the vehicle and attempted to restrain Petitioner from behind by putting his arms around Petitioner, who was still arguing with Mr. Batise. TR vol. II, at 371. Petitioner approached the driver's side window of the vehicle in which Mr.

2

Batise was sitting and shot Mr. Batise four or five times from a distance of approximately two feet. TR vol. II, at 372, 374, 417. Petitioner and Mr. Threatt then got back in Ms. Lewis's vehicle, and Ms. Lewis drove off, screaming as she was driving off, "[W]hy did you do that." TR vol. II, at 375, 376, 418. Ms. Lewis drove the vehicle with Petitioner, Mr. Threatt, and the Petitioner's baby to Mr. Threatt's cousin's home at Petitioner's suggestion. TR vol. II, at 419-420. Petitioner and Ms. Lewis went inside the residence for about ten minutes and returned to the vehicle. TR vol. II, at 421. Ms. Lewis then drove the vehicle to Mr. Threatt's girlfriend's home where Petitioner told Mr. Threatt to tell law enforcement "we got bumped or something," meaning Petitioner was "protecting himself." TR vol. II, at 422-425. Petitioner and Ms. Lewis left that house about 7:00 p.m., and Petitioner left his baby with Mr. Threatt. TR vol. II, at 427-428.

The victim's car had two bullet holes in the windshield and a third bullet hole in the driver's side door. TR vol. III, at 533-535. A fourth bullet was removed from the victim's chest cavity. TR vol. III, at 515. Crime scene investigators testified that the victim's driver's side window had been rolled up at the time of the shooting and that the shots were fired "from just forward of the driver's position, just off the left front fender" outside the victim's vehicle. TR vol. II, at 490, 494; TR vol. III, at 633. No firearm or other weapon was found in the victim's vehicle or in the crime scene area. TR vol. III, at 538, 564, 640-641. A state medical examiner testified that the victim was shot one time and that the bullet entered his left chest area at about the armpit level in a downward direction and punctured his heart, causing his death. TR vol. III, at 571-581, 589. The clerk of the convenience store where the

shooting occurred informed police of the tag number of Ms. Lewis's vehicle, and the vehicle was then traced to her father who advised police the car belonged to Ms. Lewis. TR vol. II, at 334; vol. III, at 642. Petitioner and Ms. Lewis turned themselves in at the municipal police station at about 9:00 p.m. that same day. TR vol. III, at 611-613.

The jury found Petitioner guilty of the charge of first degree murder. The jury recommended a sentence of life imprisonment. Petitioner's motion for a new trial was denied, and on August 2, 2005, Petitioner was sentenced to a term of life imprisonment.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals ("OCCA"). In his direct appeal, Petitioner asserted that (1) the trial court erred when it prevented the defense from introducing evidence that phencyclidine hydrochloride ("PCP") was present in Mr. Batise's blood at the time of his death and (2) the evidence presented at trial was insufficient to support the jury's finding of guilt beyond a reasonable doubt of murder in the first degree. Response, Ex. 1. The State of Oklahoma responded in opposition to these claims. Response, Ex. 2. The OCCA issued a decision on July 20, 2007, in which the appellate court rejected Petitioner's claims and affirmed the conviction and sentence. Respondent's Supplement to the Record (James v. State, No. F-2005-782 (Okla. Crim. App. July 20, 2007)(unpublished summary op.).

Petitioner now seeks habeas relief with respect to his conviction in Case No. CF-2003-6933. In his Petition, Petitioner raises the same two issues presented in his direct appeal.

II. Standard of Review

Because the claims raised by Petitioner were adjudicated on their merits in state court,

the standard for reviewing Petitioner's claims is prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). With respect to legal issues raised in the Petition, habeas relief may be awarded only if the appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, 545 U.S. 1146 (2005). Federal courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)). If there is no clearly established federal law in Supreme Court cases involving facts that are closely-related or similar to those in the case being reviewed, the court need not assess whether the state court's holding was "contrary to" or an "unreasonable application" of established federal law. House v. Hatch, __ F.3d __, 2008 WL 1947027, * 4-5 (10th Cir. 2008)(interpreting Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 654 (2006). Where the Supreme Court's "cases give no clear answer to the question presented, ...., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law," and habeas "relief is unauthorized" under the explicit language of 28 U.S.C. § 2254(d)(1). Wright v. Van Patten, __ U.S. __, 128 S. Ct. 743, 747 (2008)(internal quotation and citation omitted).

If "the threshold question as to the existence of clearly established federal law" is

5

answered affirmatively, then the reviewing court must determine whether the state court decision is either contrary to or an unreasonable application of that law. House, __ F. 3d at __, 2008 WL 1947027, at * 5. A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Williams, 529 U.S. at 405-406, 413. The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(*per curiam*)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per*

curiam)(citations omitted).

As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, AEDPA mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. Trial Court Error in Preclusion of Evidence

Petitioner first contends that the trial court erred in precluding him from presenting evidence concerning the presence of PCP in the victim's blood at the time of the shooting. Prior to trial, the prosecution moved *in limine* for an order prohibiting Petitioner from introducing evidence that the victim had PCP in his blood at the time of his death. The prosecutor argued that according to Ms. Lewis's testimony at the preliminary hearing Ms. Lewis told Petitioner that the victim was a gang banger, that he had recently gotten out of prison for an armed robbery, and that he was dangerous. TR vol. II, at 245. The prosecutor asserted that unless the Petitioner knew of the victim's use of PCP prior to the shooting, this evidence was irrelevant and highly prejudicial. TR vol. II, at 246. Petitioner's defense counsel argued that Petitioner should be allowed to present this evidence and that their witness, a toxicologist for the Oklahoma Medical Examiner's Office, would testify the victim had sufficient PCP in his system to alter his behavior consistent with the known effects of PCP, e.g., "that it increases agitation and aggressiveness" and exacerbates any anger the

intoxicated individual is experiencing. TR vol. II, at 253-254.  In order to assist in the trial court's decision as to whether this proffered evidence was admissible, the toxicologist testified at an *in camera* hearing that he conducted a toxicology screen on the victim and found PCP in the victim's blood. TR vol. III, at 677.  The toxicologist testified that one of the effects of PCP on human behavior is that it increases agitation and aggressive behavior and that PCP "could play a role" in the victim's behavior. TR vol. III, at 677, 682.  However, the toxicologist also testified that he could not determine when the victim ingested PCP or how the PCP would have made the victim behave. TR vol. III, at 684.  The trial judge found that the toxicologist's testimony was not admissible at the trial because it was more prejudicial than probative. TR vol. IV-A, at 52, 56-57.

In his direct appeal, Petitioner asserted that the trial court's exclusion of the toxicologist's testimony regarding the presence of PCP in the victim's blood at the time of the shooting was an abuse of the court's discretion under state evidentiary rules.  The OCCA addressed the merits of this issue in the court's decision, and the court made the following findings in rejecting the issue on its merits:

> The trial court did not abuse its discretion in excluding the testimony of the toxicologist about the results of the victim's toxicology screen at autopsy because he could not say whether or not phencyclidine (PCP) in the victim's system had any effect on his behavior.  *See Jones v. State*, 2006 OK CR 5, ¶ 48, 128 P.3d 521, 540.  The evidence would not have assisted the jury in evaluating [Petitioner's] self-defense claim because there was no evidence that [Petitioner] knew the victim was a PCP user or that he acted aggressively when under the influence.  The probative value of this evidence was minimal and its potential to confuse the issues was great.  [Petitioner] was free to present

> evidence of the victim's aggressive actions towards him on the day of the incident and evidence that his girlfriend had told him the victim was a convicted felon, a gun carrying gang member and a drug dealer. Evidence of the victim's violent nature prior to the incident was also presented through the testimony of [Petitioner's] girlfriend and her mother. The trial court's exclusion of the PCP evidence did not prevent [Petitioner] from presenting his defense that the victim was the aggressor and that he acted in self-defense when he shot him. No relief is warranted on this claim.

Respondent's Supplement to the Record, at 2.

Petitioner did not raise a constitutional issue in his direct appeal with respect to the exclusion of the toxicologist's proferred testimony. However, Petitioner now couches his claim as a due process issue, in which he contends that the exclusion of the evidence violated his Fifth and Fourteenth Amendment rights. Petition, at 2. Even assuming that Petitioner has exhausted state court remedies concerning his due process claim, there is no clearly established federal law, as determined by the Supreme Court, requiring the admission of evidence of the victim's illegal drug use in a murder trial in which the defendant claims he shot the victim in self-defense. State court evidentiary rulings do not warrant habeas relief unless the ruling rendered the "trial so fundamentally unfair as to constitute a denial of federal constitutional rights." Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir.), cert. denied, 525 U.S. 950 (1998). Accord, Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990)(due process claim related to admission of evidence at state trial will not support habeas relief "absent fundamental unfairness so as to constitute a denial of due process of law").

The Tenth Circuit Court of Appeals has recognized that "[t]he state may not arbitrarily

deny a defendant the ability to present testimony that is relevant and material and vital to the defense." Richmond v. Embry, 122 F.3d 866, 872 (10th Cir. 1997)(quotations and citations omitted).  Nevertheless, "the defendant's right to present relevant testimony may bow to accommodate other legitimate interests in the criminal trial process." Id. (quotations and citations omitted).  For instance, under federal evidentiary rules, the exclusion of evidence is proper if the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. United States v. Galloway, 937 F.2d 542, 549 (10th Cir. 1991).  The court's inquiry "'hinges on the materiality of the excluded evidence to the defense.'" Duvall v. Reynolds, 139 F.3d 768, 789 (10th Cir.)(quoting Matthews v. Price, 83 F.3d 328, 331 (10th Cir. 1996)), cert. denied, 525 U.S. 933 (1998).

At Petitioner's trial, Ms. Lewis's mother testified for the defense that after Ms. Lewis and Mr. Batise broke up Mr. Batise "kept calling on the phone several times" and he "sat in front of the house one time..." for 10 or 15 minutes. TR vol. IV-A, at 32-33.  Ms. Lewis's mother also testified that in a telephone message left at her residence by Mr. Batise she could hear him saying to another individual that he "hope[d] she didn't go back to him." TR vol. IV-A, at 36.  Ms. Lewis's preliminary hearing testimony was read to the jury in her absence.[1]

---

[1] Although it's not clear from the record, it appears that Ms. Lewis invoked her Fifth Amendment privilege not to testify because she perceived she might be charged as an accessory to the murder of Mr. Batise and/or because the state refused to grant her immunity. TR vol. I, at 224-226; TR vol. IV-A, at 57.  Because Ms. Lewis did not appear for Petitioner's trial, her preliminary hearing testimony was read to the jury as part of Petitioner's defense. TR vol. IV-A, at 4-29.

In her testimony Ms. Lewis stated that she had dated Mr. Batise, that she had seen him with a gun, that she had broken up with him, that after the break-up he "waited outside" her house and she was afraid of him, but she also testified she had not received any threatening telephone calls from Mr. Batise or his friends and that Mr. Batise had never threatened her because she broke up with him. TR vol. IV-A, at 6-8.

Petitioner testified at his trial that he was carrying a loaded weapon and that he shot the victim because he saw the victim reaching under his seat and thought the victim was going to shoot him. TR vol. IV-B, at 879-880, 910.  Petitioner and other witnesses provided evidence that the victim had acted aggressively prior to the shooting.  No one, however, testified that the victim had used PCP prior to the shooting or that the victim had previously acted aggressively while using PCP.  Under these circumstances, the proferred evidence that the victim had PCP in his blood at the time of the shooting was not relevant to the issue of whether Petitioner acted in self-defense when he admittedly shot the victim.  Hence, the trial court's refusal to allow the toxicologist to testify did not render Petitioner's trial so fundamentally unfair as to deny him due process.  The OCCA's decision was not contrary to or an unreasonable application of clearly established Supreme Court jurisprudence.  Nor was the OCCA's decision an unreasonable determination of the facts in light of the evidence admitted at Petitioner's trial.  Accordingly, Petitioner is not entitled to habeas relief concerning this issue.

IV. Sufficiency of the Evidence

In his second and final ground for habeas relief, Petitioner contends that insufficient

evidence of his guilt was presented at his trial. Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110 (1998). In applying this standard, the reviewing court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer, 74 F.3d at 1013 (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16. In Oklahoma, murder in the first degree is the unlawful killing of a human being with malice aforethought. Okla. Stat. tit. 21, § 701.7(A). "Premeditated design sufficient to establish malice aforethought may be inferred from the fact of killing alone, unless the facts and circumstances raise a reasonable doubt as to whether such design existed." Hancock v. State, 155 P.3d 796, 812 (Okla. Crim. App. 2007). "The unlawful design to effect death, by which

a homicide constitutes murder, may be formed instantly before committing the act by which it is carried into execution." Id.  Additionally, the prosecution must prove, beyond a reasonable doubt, that the offender did not act in self-defense. Id.

Petitioner supports his claim that the evidence presented at his trial was insufficient by referring to pretrial comments made by the judge who presided over his preliminary hearing and also by the judge who presided over his trial.  However, such comments are not relevant to the issue of whether a reasonable jury would have found Petitioner guilty of murder in the first degree.  In his reply, Petitioner contends that the evidence presented at his trial "supports a heat of passion (road rage) manslaughter charge...." Petitioner's Reply to Attorney General's Response, at 2.  Citing to the relevant Jackson standard, the OCCA found without explanation that the evidence presented at Petitioner's trial was sufficient to support the jury's verdict. Respondent's Supplement to the Record, at 2-3.

There was substantial evidence presented at Petitioner's trial that he intentionally and with premeditation shot the victim.  Petitioner admitted that he was arguing with Mr. Batise and that he took a loaded weapon from under Ms. Lewis's vehicle's front seat, got out of Ms. Lewis's vehicle, and shot at the victim multiple times while the victim was sitting in a car.  Evidence presented at the trial showed that the victim was shot at close range, that the victim's car window was rolled up at the time of the shooting, and that no weapon was found in the victim's car.  An eyewitness testified that Ms. Lewis's vehicle in which Petitioner was a passenger could have left the convenience store's parking lot, even though the victim had driven into the parking lot in a manner that partially blocked Ms. Lewis's vehicle. TR vol.

II, at 366, 382. Evidence presented at the trial also showed that immediately before the shooting Mr. Threatt attempted to restrain Petitioner by putting his arms around Petitioner from behind, but that Petitioner managed to shoot the victim. TR vol. II, at 372-373. There was also circumstantial evidence of Petitioner's guilt based on his actions following the shooting. Evidence showed that after he shot the victim Petitioner re-entered Ms. Lewis's vehicle, and Ms. Lewis drove away from the scene of the shooting. Petitioner and Ms. Lewis attempted to keep law enforcement from discovering Ms. Lewis's vehicle by leaving it at a friend's apartment complex backed into the parking lot where the vehicle's tag could not be seen from the street. TR vol. III, at 649-650, 671. There was also evidence that Petitioner initially convinced Mr. Threatt to lie to the police about the events leading up to the shooting. TR vol. II, at 433-434.

Considering the evidence presented at trial in the light most favorable to the prosecution, a rational jury could have found Petitioner guilty of the elements of first degree murder beyond a reasonable doubt. Petitioner's contention is that the jury heard his testimony that he only shot the victim because he believed the victim was reaching for a weapon, and therefore the jury should have found him not guilty because he shot the victim in self-defense.[2] However, the Jackson standard does not allow for reweighing the credibility

---

[2] Although in Oklahoma heat-of-passion manslaughter was available as a lesser offense of the first degree murder charge at the time of Petitioner's trial, the record shows that Petitioner voluntarily and knowingly chose to forego a jury instruction on the lesser offense. TR vol. V, at 1034-1035. Thus, Petitioner's argument that the jury should have found him guilty of heat-of-passion manslaughter has no merit.

of the witnesses' trial testimony, and the jury obviously did not believe Petitioner's testimony that he acted in self-defense. The OCCA's decision was not contrary to or an unreasonable application of the prevailing Jackson standard. Nor was the OCCA's decision based on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by  July 14th , 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  24th  day of  June , 2008.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE